Cunningham-Woodward Company, Claimant, *v.* The State of New York, Defendant.
Claim No. 636-A.

Court of Claims, December, 1922.

**Claims against the state — failure of state to furnish material as required by contract — damages — counterclaim dismissed.**

Claimant is the assignee of a contract entered into with the state by its assignor on April 18, 1910, for the construction of a dike and highway to be finished in August, 1910. The specifications provided that the material necessary for building the dike should be taken from borrow pits shown upon the plans. The map which accompanied the proposal located the borrow pit on L. farm. Claimant began work on the dike on April 28, 1910. On May 5, 1910, the state having decided to enlarge the contract, asked claimant to consent to change the borrow pit from L. farm to T. farm, which claimant did. The modifying contract was not approved by the canal board until June 25, 1910, and was signed on June 28, 1910. The time for completion of the amended contract was extended to the fall of the year. The substituted borrow pit was not made available to claimant until fifty-four days after the consent was given, and the material therein did not conform to the specifications and was handled at a greatly increased cost to the claimant. Notwithstanding claimant's objections to the use of the material the state compelled it to use the material. *Held*, that the state having failed to furnish a borrow pit for at least fifty-four days after the change to the T. farm was consented to the claimant is entitled to recover the loss it sustained by reason of such delay; that the state, having failed in its duty under the contract to furnish claimant with material required by the contract, must respond in damages.

The state's counterclaim seeking to recover penalty for delay in completing the work and for repairs dismissed.

Claim for work done in construction of dike and highway.

*T. B. Cotter*, for claimant.

*George L. Meade*, deputy attorney-general, for State of New York.

Wood, J. On April 18, 1910, Cunningham & Woodward, a copartnership, entered into a contract with the state of New York for the construction of a dike and highway along the Oswego river in the vicinity of Fulton, N. Y. Thereafter the copartnership with the consent of the state assigned its contract to the Cunningham-Woodward Company, the claimant herein. The contract was to be completed by August 20, 1910, and embraced several items of work, but the claim here asserted arose out of items 1 and 2 of the itemized proposal for bidders. The work under these items called for excavating material from borrow pits and placing the material on the embankment forming the dike. The bidders' map

which accompanied the proposal indicated that the borrow pit would be located on the Limbeck farm adjacent to the work.

The specifications of the contract provided in part:

" Material used in forming embankment shall be satisfactory to the Engineer and of a nature that will under proper manipulation compact into a solid impervious and permanent embankment. It shall be free from perishable material and from other material liable to become unstable when saturated with water after having been compacted.

" Material to be borrowed shall be taken from borrow pits shown upon the plans and if sufficient suitable material is not found in them, it shall be taken from the nearest available locations, selected by the Engineer.

" When sufficient suitable material for forming embankment or backfill is not obtained from the excavation, the deficiency shall be supplied by the contractor, from borrow pits located and appropriated by the State for free use by said contractor."

The claim is based, *first,* on the loss sustained by delays caused by the failure of the state to furnish a borrow pit from which to excavate material and by the additional time required to handle the material actually furnished by the state; and *second,* on the loss sustained by reason of the additional and increased cost of handling the material furnished by the state — material alleged to be substantially different than that bid on and specified in the contract.

With respect to the first part of the claim it appears that shortly after the signing of the contract the claimant began to assemble machinery, equipment and men and actually began work on and about the dike, preliminary to excavation, on April 28, 1910. At about this time the state decided to enlarge the contract and on May 5, 1910, asked claimant to consent to a change of borrow pits from the Limbeck farm to the Taylor farm, some half mile further south, giving as the reason that ample material for the increased excavation could there be had and that it was more convenient to the work. Claimant on the same day consented to the change. The modifying contract, known as alteration contract No. 2, providing for the additional excavation and for the change in borrow pits was, however, not approved by the canal board until June 25, 1910, and was not signed by the parties hereto until June 28, 1910. The time for the completion of the contract as amended was extended to the fall of that year. Thus the substituted Taylor pit was not made available to the claimant until fifty-four days after the consent was given.

In the meantime the steam shovel for excavation work and engines and cars for carrying the excavated material to the dike

and men to operate them were brought to the work area and remained idle pending the appropriation of a borrow pit by the state. The expense occasioned by this delay is sought to be recovered. Obviously there can be no recovery unless the state failed in a duty it owed to claimant. It cannot be denied that the state owed to the claimant all reasonable opportunity to progress the work with all reasonable speed. The state agreed to furnish borrow pits for the excavation and fill. It failed to do so for at least fifty-four days after the change to the Taylor pit was consented to and, as claimant was put to additional and unnecessary expense, recovery should be had for this item of claim.

Claimant also contends, and the proof amply supports the contention, that after excavation work was begun in the Taylor pit, material of a character entirely different from that specified in the contract for embankment was found and that the excavating of this material and the placing of it upon the dike so delayed the progress of the work that the contract was not completed before November of the following year.

It appears that weather conditions made it necessary to shut down operations on November 23, 1910. This was done after conference with the state's engineer and by his direction. The machinery and plant were dismantled and housed for the winter.

In the latter part of May, 1911, claimant began to take the machinery out of storage and to reassemble the plant for operation. By June 1, 1911, the plant was ready to resume work and actually did do so for a day or two but the borrow pit was so wet and the material so soft and unfit for use that work was discontinued and was not resumed until June 28, 1911. Between these dates the state inspected other lands adjacent to the work upon which to locate another borrow pit, and certain recommendations were made but nothing was accomplished and the contractor was directed to resume operations in the old pit on the latter date.

The claimant contends that it should be reimbursed for the expenses incurred in taking down the machinery and plant in the fall of 1910, in housing the machinery during the winter, and in reassembling it in the spring of 1911. Concurrence in this contention depends on whether the delay in completing the contract in 1910, and in the carrying of the work over until the spring of 1911 was caused by the state or was occasioned by any fault of claimant. We believe the testimony clearly established the fault to be entirely with the state in breaching its obligation to furnish borrow pits of specified material and that recovery should be had for the loss thereby sustained.

We now come to a consideration of the second part of the claim.

Court of Claims, December, 1922. [Vol. 119

Under the terms of the contract the state was to locate and furnish, free to claimant, the necessary borrow pits from which to obtain suitable material to construct the dike and highway. It is conceded that claimant was obligated to take the material from borrow pits so designated by the state. The contractor could not itself select the material or borrow pits or on its own volition change the borrow pits if they contained improper material. The selection rested solely with the state. The contractor had to use what the state gave it to use and surely it cannot be successfully argued that if the state violated the terms of its own contract, it should not answer in damages. On the plans accompanying proposal for bidders the location of the borrow pits was designated and it appears that the contractor satisfied itself by an investigation that the required quantity of the specified material was there to be had and accordingly made its bid.

The work had progressed in its initial stage for some time when the state's engineer requested the claimant to consent to a change in the location of the borrow pit from the Limbeck farm to the Taylor farm, and claimant readily consented after a hurried inspection of the test pit dug on the Taylor farm. It is evident that the state simply intended to effect a change of location of borrow pits. The agreement to such change did not contemplate that the material would be different in character than that specified by the state and to be found on the Limbeck farm and which the contractor bid on. The material specified for embankment was material of a nature that would under proper manipulation compact into a solid, impervious and permanent embankment, free from perishable material and from other material liable to become unstable when saturated with water after having been compacted. The testimony is undisputed that the material available on the Limbeck farm was of the kind and character specified for use in the contract and there is proof that sufficient quantities could have been taken therefrom to complete the contract. It was clearly established that the material taken from the Taylor pit did not conform to the specifications and was handled both at the pit and at the fill at a greatly increased cost to the claimant. It was described as of a porous nature, wet and sticky, with a tendency to quicksand — certainly of a far different character than the specifications called for. Claimant frequently objected to the use of this material on the ground that it was improper material to use for embankment and on the further ground that the cost of handling it was much more than the contract price; yet the state with knowledge of these facts waived the objections aside and compelled claimant to continue excavation in the Taylor pit. The

resident engineer recommended abandonment of the pit. The condition of the material and the difficulty of handling it was the subject of discussion by the advisory board of engineers on more than one occasion and yet the state did nothing to relieve the situation.

The state prepared the plans. It specified the character of material to be used and it obligated itself to furnish this material. These facts the contractor knew when it made its bid. It had a right to rely wholly on the duty and obligation of the state to furnish the material it specified to be used. It also had a right to rely on that provision of the contract that if sufficient material was not found in the borrow pit selected, the deficiency should be taken from other borrow pits located and appropriated by the state for free use by the contractor. For the failure of the state to fulfill its part of the contract and which failure greatly increased the expense of handling this material the claimant asks the state to reimburse it. We think it should unless the state is relieved therefrom by the application of clause 10 of the contract which is urged in defense of the claim, in which clause the contractor agrees not to rely upon the information prepared by the state engineer and that it will make no claim against the state because of representations of any kind made by the state which may prove to be erroneous.

We are not unmindful of the decisions of the higher courts which deny a recovery upon claims based on misrepresentation and implied warranty where this clause is a part of the contract (*Foundation Company* v. *State of New York*, 233 N. Y. 177; *Matter of Semper* v. *Duffy*, 227 id. 151), but the theory upon which this claim rests is based not on a misrepresentation by the state but on the default of the state in failing to supply material of the kind specified, a duty it owed to claimant, and in compelling claimant to use material of a different character than the contract called for, at a substantially increased cost in handling.

The state attempted to establish that much of the increased expense of handling the material in the Taylor pit was caused by heavy rainfalls; but the proof does not bear this out. To the contrary is the preponderating proof that the character of the soil and material in the Taylor pit was the sole cause of claimant's difficulties and occasioned the increased expense in the performance of the work, for which it here seeks to recover. There is ample proof in the case that when the condition of the Taylor pit became evident the claimant protested; but that the protest was denied, and it was forced to use the material there found. The claimant, under the provisions of the specifications, urged upon the state the use of another borrow pit, but this was denied. There is no proof of probative force before us that the claimant in the prose-

County Court, Rensselaer County, December, 1922.     [Vol. 119

cution of the work did not use proper engineering methods, or that the management of the enterprise was not proper, or that the equipment used was not proper equipment. In fact it appears that the state's representatives never criticised the work to claimant and never reported to their superiors any criticism of the method of the work or equipment employed. On the trial the state offered no testimony to refute the items of cost actually incurred by claimant in excavating from the Taylor pit and in constructing the dike with the material taken therefrom.

We are, therefore, of the opinion that in respect to the material furnished by the state to the contractor for the construction work required by the contract, the state failed in its duty and must respond in damages.

The counterclaim which was filed by the state in the course of the trial and which seeks to recover a penalty for the delay in completing the work and for the expense of repairs to the dike in August, 1913, is dismissed for the reason that the delay in the prosecution and completion of the work was occasioned by the default of the state in failing to select a borrow pit of specified material and in compelling the claimant to excavate and use on the embankment improper material. It also appears that the work under the contract was accepted by the state in March of 1912, and that the contract for repairs was not let until August 27, 1913. No proof was offered that established that the repairs were made necessary by any default on the part of the contractor, and there is proof that the necessity for repairs was occasioned solely by the character of material used on the embankment and which was furnished to the contractor by the state. The state cannot recover for a condition created by its own act.

The first part of the claim is allowed in the sum of $2,853.29. The second part of the claim is allowed in the sum of $22,134.27.

ACKERSON, P. J., and CORWIN, J., concur.

Judgment accordingly.